PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
Pedro A. Jimenez
Shlomo Maza
Derek Cash

*Proposed Attorneys for the Debtor and Debtor-in-Possession*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| GRUPO FAMSA S.A.B. DE C.V.,[1] | ) Case No. 20-_____(___) |
| | ) |
| Debtor. | ) |
| | ) |

---

## PREPACKAGED CHAPTER 11 PLAN

---

PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

*Proposed Attorneys to the Debtor and Debtor-in-Possession*

Dated: May 29, 2020

---

[1] The Debtor, together with the last four digits of its Mexican federal tax identification number, is Grupo Famsa S.A.B. de C.V. (5267). The location of the Debtor's corporate headquarters and service address are: Avenida Pino Suárez 1202 Norte, Piso 3, Unidad "A", Zona Centro, 64000 Monterrey, Nuevo León, Mexico.

# TABLE OF CONTENTS

**Page**

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME,
      GOVERNING LAW, AND OTHER REFERENCES .................................................... 1

    1.1    Defined Terms ........................................................................................... 1
    1.2    Rules of Interpretation ............................................................................. 8
    1.3    Computation of Time ............................................................................... 8
    1.4    Governing Law ........................................................................................ 8
    1.5    Reference to Monetary Figures ................................................................ 8

ARTICLE II ADMINISTRATIVE AND PRIORITY CLAIMS .......................................... 8

    2.1    Administrative Claims ............................................................................. 8
    2.2    Professional Claims ................................................................................. 9
    2.3    Priority Tax Claims ................................................................................. 9
    2.4    Other Priority Claims .............................................................................. 9
    2.5    Payment of Statutory Fees ....................................................................... 9
    2.6    Trustee Expenses ..................................................................................... 9

ARTICLE III CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS ................... 10

    3.1    Classification of Claims and Interests ................................................... 10
    3.2    Treatment of Classes of Claims and Interests ....................................... 10
    3.3    Special Provision Governing Reinstated and Unimpaired Claims ......... 14
    3.4    Elimination of Vacant Classes .............................................................. 14

ARTICLE IV PROVISIONS FOR IMPLEMENTATION OF THE PLAN ........................ 14

    4.1    General Settlement of Claims ................................................................ 14
    4.2    Subordination ........................................................................................ 14
    4.3    Sources of Cash for Plan Distributions ................................................. 14
    4.4    Issuance of New Notes ........................................................................... 14
    4.5    Vesting of Assets in the Reorganized Debtor ........................................ 15
    4.6    Discharge from 2020 Notes, Instruments, Certificates, and Other Documents ........ 15
    4.7    Restructuring Transactions .................................................................... 15
    4.8    Corporate Action ................................................................................... 16
    4.9    New Corporate Governance Documents ................................................ 16
    4.10   Effectuating Documents; Further Transactions ..................................... 16
    4.11   Section 1146(a) Exemption ................................................................... 16
    4.12   Managers, Directors and Officers ......................................................... 16
    4.13   Preservation of Rights of Action ........................................................... 16
    4.14   Directors and Officers Insurance Policies ............................................. 17
    4.15   Indemnification Provisions in Organizational Documents ..................... 17
    4.16   Reinstatement of Equity Interests ......................................................... 17
    4.17   Exemption from Registration Requirements .......................................... 17

ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .............................. 18

    5.1    Assumption and Rejection of Executory Contracts and Unexpired Leases ................... 18
    5.2    Claims Based on Rejection of Executory Contracts or Unexpired Leases ..................... 18
    5.3    Cure of Defaults for Executory Contracts and Unexpired Leases Assumed ................. 18
    5.4    Insurance Policies .................................................................................. 19

## TABLE OF CONTENTS
(continued)

Page

5.5     Indemnification Provisions ........................................................................................ 19
5.6     Benefit Programs ........................................................................................................ 19
5.7     Modifications, Amendments, Supplements, Restatements or Other Agreements .......... 19
5.8     Reservation of Rights .................................................................................................. 19
5.9     Nonoccurrence of the Effective Date .......................................................................... 19
5.10    Contracts and Leases Entered into After the Petition Date .......................................... 20

ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS ................................................ 20

6.1     Distributions on Account of Claims Allowed as of the Effective Date .......................... 20
6.2     Special Rules for Distributions to Holders of Disputed Claims .................................... 20
6.3     Disbursing Agent ........................................................................................................ 20
6.4     Distributions on Account of 2020 Notes Claims .......................................................... 21
6.5     Delivery of Distributions and Undeliverable or Unclaimed Distributions .................... 21
6.6     Setoffs ........................................................................................................................ 22
6.7     Allocation Between Principal and Accrued Interest ..................................................... 23

ARTICLE VII PROCEDURES FOR RESOLVING DISPUTED CLAIMS .................................. 23

7.1     Disputed Claims .......................................................................................................... 23
7.2     Resolution of Disputed Claims .................................................................................... 23
7.3     Estimation of Claims ................................................................................................... 23
7.4     No Interest .................................................................................................................. 24
7.5     No Distributions Pending Allowance ........................................................................... 24
7.6     Disallowance of Claims and Interests .......................................................................... 24

ARTICLE VIII EFFECT OF CONFIRMATION OF THE PLAN ............................................... 24

8.1     Compromise and Settlement of Claims, Interests, and Controversies ........................... 24
8.2     Discharge of Claims and Termination of Interests ....................................................... 24
8.3     Releases by the Debtor ................................................................................................ 25
8.4     Releases by the Releasing Parties ................................................................................ 25
8.5     Exculpation ................................................................................................................ 26
8.6     Injunction ................................................................................................................... 26
8.7     Protection Against Discriminatory Treatment ............................................................. 27
8.8     Recoupment ................................................................................................................ 27
8.9     Release of Liens .......................................................................................................... 27
8.10    Reimbursement or Contribution .................................................................................. 27

ARTICLE IX CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ................................. 27

9.1     Conditions Precedent to the Effective Date. ................................................................ 27
9.2     Waiver of Conditions Precedent .................................................................................. 28
9.3     Effect of Non-Occurrence of Conditions to Consummation ......................................... 28

ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ................ 28

10.1    Modification of Plan .................................................................................................... 28
10.2    Revocation or Withdrawal of Plan ............................................................................... 28

## TABLE OF CONTENTS
(continued)

| | | Page |
|---|---|---|

ARTICLE XI RETENTION OF JURISDICTION ........................................................................... 29

    11.1    Jurisdiction ............................................................................................ 29

ARTICLE XII MISCELLANEOUS PROVISIONS ..................................................................... 30

    12.1    Additional Documents ......................................................................... 30
    12.2    Reservation of Rights .......................................................................... 30
    12.3    Successors and Assigns ....................................................................... 30
    12.4    Service of Documents .......................................................................... 30
    12.5    Term of Injunctions or Stays ............................................................... 31
    12.6    Entire Agreement ................................................................................. 31
    12.7    Plan Supplement Exhibits .................................................................... 31
    12.8    Non-Severability .................................................................................. 31

EXHIBIT A       List of Non-Debtor Guarantors

## INTRODUCTION

Grupo Famsa S.A.B. de C.V., as debtor and debtor in possession (the "Debtor") proposes this prepackaged plan of reorganization under chapter 11 of the Bankruptcy Code (the "Plan"). Reference is made to the Disclosure Statement for a discussion of the history, businesses, properties and operations, projections and risk factors related to the Debtor, as well as a summary and analysis of this Plan and certain related matters. Capitalized terms used herein shall have the meanings set forth in Section 1.1 below.

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

### 1.1    **Defined Terms**

1.      "*2020 Notes*" means those certain 7.250% Senior Notes due 2020, issued by the Debtor pursuant to the 2020 Notes Indenture.

2.      "*2020 Notes Claims*" means any and all Claims of a 2020 Notes Creditor against the Debtor arising under or in connection with the 2020 Notes Indenture, the 2020 Notes, the 2020 Notes Guarantees and all other financing, security and related documents executed in furtherance of the issuance of the 2020 Notes, including for the avoidance of doubt, accrued and unpaid interest on the 2020 Notes up to the Petition Date.

3.      "*2020 Notes Guarantees*" means those guarantees provided by the Non-Debtor Guarantors pursuant to which the Non-Debtor Guarantors guaranteed the Debtor's obligations under the 2020 Notes.

4.      "*2020 Notes Indenture*" means that certain Indenture, by and among the Debtor, as issuer, the Non-Debtor Guarantors, and The Bank of New York Mellon, as trustee, paying agent, transfer agent and registrar,.

5.      "*2024 Notes*" means those 9.75% Senior Secured Notes due 2024 issued by the Debtor pursuant to the 2024 Notes Indenture.

6.      "*2024 Notes Claims*" means any and all Claims of a 2024 Notes Creditor against the Debtor arising under or in connection with the 2024 Notes Indenture, the 2024 Notes, the 2024 Notes Guarantees and all other financing, security and related documents executed in furtherance of the issuance of the 2024 Notes, including for the avoidance of doubt, accrued and unpaid interest on the 2024 Notes up to the Petition Date.

7.      "*2024 Notes Creditors*" means any and all Holders of the 2024 Notes.

8.      "*2024 Notes Guarantees*" means those guarantees provided by one or more subsidiaries of the Debtor pursuant to which those entities guaranteed the Debtor's obligations under the 2024 Notes.

9.      "*2024 Notes Indenture*" means that certain Indenture, by and among Grupo Famsa, S.A.B. de C.V., the Subsidiary Guarantors Party Thereto, and The Bank of New York Mellon, as trustee, paying agent, transfer agent, registrar and collateral agent.

10.     "*Administrative Claim*" means any Claim for costs and expenses of administration during the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate and operating the businesses of the Debtor; (b) Allowed Professional Claims; and (c) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

11.     "*Affiliate*" means affiliate as such term is defined in section 101(2) of the Bankruptcy Code.

12.     "*Allowed*" means, with reference to any Claim or Interest, or any portion thereof, that is (a) specifically allowed under this Plan, (b) allowed under the Bankruptcy Code, or (c) allowed by a Final Order.

13.     "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other claims, actions, or remedies that may be brought by or on behalf of any Debtor or its Estate or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code.

14.     "*Ballot*" means the form or forms distributed to certain Holders of Claims that are entitled to vote on the Plan by which such parties may indicate acceptance or rejection of the Plan and includes both the form distributed for use by the actual beneficial owners of the 2020 Notes and the form distributed for use by the bank, broker, or other financial institution that holds the 2020 Notes in "street name" on behalf of one or more beneficial owners.

15.     "*Bancomext*" means Banco Nacional de Comercio Exterior, S.N.C.

16.     "*Bancomext Claim*" means all claims arising under or in connection with the Bancomext Credit Lines.

17.     "*Bancomext Credit Lines*" means (a) that certain line of credit entered into, an on unsecured basis, as of July 25, 2017 in an amount of up to 2,634,270,000 Pesos between and among Bancomext as lender, Grupo Famsa as borrower, and certain subsidiaries of Grupo Famsa as guarantors and (b) that certain line of credit entered into, on an unsecured basis, as of June 20, 2018 in an amount of up to one billion Pesos between and among Bancomext as lender, Grupo Famsa as borrower, and certain subsidiaries of Grupo Famsa as guarantors.

18.     "*Banco Multiva*" means, collectively, Banco Multiva, S.A., Institucion de Banca Multiple and Grupo Financiero Multiva.

19.     "*Banco Multiva Claim*" means all claims arising under or in connection with the Banco Multiva Credit Agreement.

20.     "*Banco Multiva Credit Agreement*" means that certain debt recognition agreement and unsecured promissory note dated as of December 29, 2015 between and among Banco Multiva, S.A., Institucion de Banca Multiple and Grupo Financiero Multiva, as lenders, Grupo Famsa, as borrower, and Famsa Mexico, S.A. de C.V., as joint obligor and guarantor.

21.     "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as may be amended from time to time.

22.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of New York or such other court having jurisdiction over the Chapter 11 Case.

23.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Case and the general, local, and chambers rules of the Bankruptcy Court.

24.     "*BBVA*" means BBVA Bancomer, S.A., a banking institution organized under the laws of Mexico and a member of Grupo Financiero BBVA Bancomer.

25.     "*BBVA Claim*" means all claims arising under or in connection with the BBVA Credit Line.

26.     "*BBVA Credit Line*" means that certain secured line of credit line of credit in the aggregate amount of 210 million Pesos effective as of June 22, 2018, between BBVA as lender, Grupo Famsa, S.A.B. de C.V. as borrower and certain of Grupo Famsa's subsidiaries as guarantors.

27.     "*Business Day*" means any day, other than (a) a Saturday, Sunday, or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)), or (b) any other day on which banks are legally permitted to be closed in New York or Mexico.

28.     "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

29.     "*Cash Payment*" means Cash in an amount of $10 for each $1,000 of principal amount of 2020 Notes held by a Holder of an Allowed 2020 Notes Claim determined as of the Record Date and whose Ballot voting in favor of the Plan is received prior to the Voting Deadline, with such Cash to be paid by the Reorganized Debtor subject to the occurrence of the Effective Date.

30.     "*Causes of Action*" means any and all claims, actions, causes of action, choses in action, suits, debts, demands, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including all claims and any avoidance, recovery, subordination, or other actions against Insiders and/or any other Entities under the Bankruptcy Code, including Avoidance Actions) of the Debtor, the Debtor in possession, and/or the Estate, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, that are or may be pending on the Effective Date or commenced by the Reorganized Debtor after the Effective Date against any Entity, based in law or equity, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order.

31.     "*Chapter 11 Case*" means the case pending for the Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

32.     "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

33.     "*Claims and Solicitation Agent*" means the claims, noticing, and/or solicitation agent the Debtor will retain in the Chapter 11 Case pursuant to an order of the Bankruptcy Court.

34.     "*Class*" means a category of Holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

35.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

36.     "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

37.     "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtor seek entry of the Confirmation Order.

38.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code and approving the Disclosure Statement.

39.     "*Consummation*" means the occurrence of the Effective Date.

40.     "*Creditor*" has the meaning set forth in section 101(10) of the Bankruptcy Code.

41.     "*Debtor*" has the meaning set forth in the introductory paragraph of this Plan.

42.     "*Description of New Notes*" means the Description of the New Notes annexed to the Disclosure Statement.

43. "*Disbursing Agent*" means the Reorganized Debtor or any Entity selected by the Debtor or Reorganized Debtor and identified in the Plan Supplement, as applicable, to make or facilitate distributions contemplated under the Plan.

44. "*Disclosure Statement*" means that certain Offering Memorandum and Consent Solicitation Statement dated as of April 28, 2020, as may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, to be approved by the Bankruptcy Court.

45. "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Debtor, on or after the Effective Date, upon which the Reorganized Debtor or the Disbursing Agent shall make distributions to Holders of Allowed Claims and Interests entitled to receive distributions under the Plan.

46. "*DTC*" means The Depository Trust Company.

47. "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in Section 9.1 have been satisfied or waived in accordance with Section 9.2.

48. "*Entity*" has the meaning set forth in section 101 (15) of the Bankruptcy Code.

49. "*Estate*" means the bankruptcy estate of the Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

50. "*Exculpated Claim*" means any Claim related to any act or omission in connection with, relating to, or arising out of the Debtor's and Non-Debtor Guarantors' in-court or out-of-court efforts to negotiate, enter into or implement the Chapter 11 Case, the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with or pursuant to the Disclosure Statement or the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the administration and implementation of the Plan, or the distribution of property under the Plan.

51. "*Exculpated Party*" means each of the following in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) the Non-Debtor Guarantors; (d) the Trustee; (e) the Existing Equityholders; and (f) with respect to each of the foregoing Entities in clauses (a) through (e) such Entity's predecessors, successors and assigns and current and former Affiliates, subsidiaries, officers, directors, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals.

52. "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

53. "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction entered on the docket of such court that has not been reversed, vacated, stayed, modified, or amended, and as to which the time to appeal, petition for certiorari, seek to review or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or review or other proceedings for reargument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari or review, reargue or rehear shall have been waived in writing in form and substance satisfactory to the Debtor or the Reorganized Debtor, or, in the event that an appeal, writ of certiorari or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari or review, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari or review or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

54. "*General Unsecured Claim*" means any Claim against a Debtor other than an Administrative Claim, a Professional Claim, a Senior Secured Notes Claim, an Other Secured Claim, a Priority Tax Claim, an Other Priority Claim or an Intercompany Claim.

55.　　"*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

56.　　"*Holder*" means an entity holding a Claim or Interest.

57.　　"*Impaired*" means a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

58.　　"*Insider*" has the meaning set forth in section 101(31) of the Bankruptcy Code.

59.　　"*Intercam Claim*" means any and all claims arising under or in connection with the Intercam Credit Line.

60.　　"*Intercam Credit Line*" means that three year credit facility in an amount of up to 150 million Pesos entered into, on an unsecured basis, by and between Intercam Banco, S.A. as lender and Grupo Famsa, S.A.B. de C.V. as borrower.

61.　　"*Intercompany Claim*" means any account reflecting intercompany book entries or a Claim by one Debtor against another Debtor or by a Non-Debtor Guarantor against a Debtor.

62.　　"*Intercompany Interest*" means an Interest in a Debtor held by another Debtor.

63.　　"*Interest*" means any membership, stock or other equity ownership interest in a Debtor and all dividends and distributions with respect to such membership, stock or other equity ownership interest and all rights, options, warrants (regardless of when exercised), other rights to acquire any membership, stock or other equity ownership interest in a Debtor existing immediately prior to the Effective Date.

64.　　"*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

65.　　"*Mexico*" means the United Mexican States.

66.　　"*New Board*" means, collectively, the initial board of directors or members, as the case may be, of the Reorganized Debtor.

67.　　"*New Corporate Governance Documents*" means the form of the articles of incorporation and bylaws, or other similar organizational and constituent documents, as may be required under applicable law, for the Reorganized Debtor, and which forms shall be included in the Plan Supplement.

68.　　"*New Series A Notes*" means the 10.25% Notes due 2023 that the Reorganized Debtor will issue to Holders of Allowed 2020 Notes Claims who voted in favor of the Plan on or prior to the Voting Deadline and delivered their 2020 Notes in accordance with the required procedures, with such New Series A Notes to be issued on the terms set forth in the Description of New Notes in an aggregate principal amount of US$1,000 per US$1,000 of 2020 Notes plus all accrued and unpaid interest on the 2020 Notes up to the Effective Date, with such principal and interest amounts to be based on that portion of the 2020 Notes held by Holders of Allowed 2020 Notes Claims who satisfied the conditions to receive New Series A Notes.

69.　　"*New Series B Notes*" means the 9.75% Notes due 2024 that the Reorganized Debtor will issue to Holders of Allowed 2020 Notes Claims who did not satisfy the conditions to receive New Series A Notes, with such New Series B Notes to be issued on the terms set forth in the Description of New Notes in an aggregate principal amount of US$1,000 per US$1,000 of 2020 Notes, with such principal amount to be based on that portion of the 2020 Notes held by Holders of Allowed 2020 Notes Claim who did not satisfy the conditions to receive New Series A Notes.

70.　　"New Notes" means, collectively, the New Series A Notes and New Series B Notes.

71.    "*New Notes Distribution*" means, in full satisfaction of all 2020 Notes Claims, (a) for Holders of 2020 Notes who were holders of record as of the Record Date and who submitted their vote in favor of the Plan prior to the Voting Deadline and delivered their 2020 Notes in accordance with the required procedures, (i) their pro rata share of New Series A Notes and (ii) the Cash Payment, and (b) for all other Holders of 2020 Notes, their pro rata share of New Series B Notes.

72.    "*New Notes Indenture*" means the indenture governing the New Notes, which shall be consistent with the Description of New Notes in all material respects.

73.    "*Non-Debtor Guarantors*" means those certain companies affiliated with the Debtor and which are listed on Exhibit A to the Plan.

74.    "*Other Priority Claim*" means any Claim against the Debtor other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

75.    "*Other Secured Claim*" means any Secured Claim against the Debtor other than the (i) 2024 Notes Claims or (ii) BBVA Claim.

76.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

77.    "*Peso*" or "*Ps$*" means pesos, the legal tender of Mexico.

78.    "*Petition Date*" means the date on which the Debtor filed its petition for relief commencing the Chapter 11 Case.

79.    "*Plan*" means this chapter 11 plan, as it may be altered, amended, modified, or supplemented from time to time, including the Plan Supplement and all exhibits, supplements, appendices, and schedules.

80.    "*Plan Supplement*" means any compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan, which shall be filed by the Debtor no later than five (5) Business Days prior to the date first scheduled for the Confirmation Hearing, or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and additional documents filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

81.    "*Priority Tax Claim*" means any Claim of a Governmental Unit against the Debtor of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code, including a Secured Tax Claim.

82.    "*Professional*" means an Entity: (a) employed in the Chapter 11 Case pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

83.    "*Professional Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of costs, expenses or other charges incurred under sections 330, 331, or 503(b) of the Bankruptcy Code after the Petition Date and prior to and including the Effective Date.

84.    "*Proof of Claim*" means a proof of Claim filed against the Debtor in the Chapter 11 Case.

85.    "*Pro Rata*" means the proportion of an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in that Class.

86.    "*Record Date*" means (i) for purposes of making distributions under the Plan on account of Allowed Claims, the Confirmation Date, and (ii) for purposes of casting Ballots on the Plan, May 28, 2020.  Notwithstanding the foregoing, the Record Date in (i) herein shall not apply to holders of 2020 Notes who receive New Series A Notes,

who shall receive their distribution in accordance with the procedures to be set forth in the Plan Supplement, or to holders of 2020 Notes who receive New Series B Notes, who shall receive their distribution via a mandatory exchange in accordance with the customary procedures of DTC.

87.    "*Reinstated*" means, with respect to Claims and Interests, treated in accordance with section 1124 of the Bankruptcy Code.

88.    "*Released Party*" means each of the following: (a) the Debtor; (b) the Non-Debtor Guarantors; (c) the Trustee; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's successors and assigns, and current and former Affiliates, subsidiaries, officers, directors, members, stockholders, partners, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such.

89.    "*Releasing Party*" means each of the following: (a) the Holders of 2020 Notes who (i) affirmatively vote to accept the Plan or (ii) abstain from voting on the Plan; (b) the Trustee; and (c) with respect to each of the foregoing Entities in clauses (a) and (b), such Entity's successors and assigns, and current and former Affiliates, subsidiaries, officers, directors, members, stockholders, partners, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such.

90.    "*Reorganized Debtor*" means, with respect to the Debtor, any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date, it being understood that, as of the Effective Date, the Reorganized Debtor shall be a corporation organized under the laws of Mexico.

91.    "*Secured Claim*" means a Claim against the Debtor: (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

92.    "*Secured Tax Claim*" means any Secured Claim which, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code.

93.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, or any similar federal, state or local law.

94.    "*Short Term Notes Claim*" means any and all claims arising under or in connection with the Short Term Notes Program.

95.    "*Short Term Notes Program*" means those certain master agreements dated as of January 30, 2015 and March 9, 2015, pursuant to which the Debtor issued Peso denominated unsecured debt certificates of varying maturities and interest rates.

96.    "*Trustee*" means The Bank of New York Mellon, in its capacity as trustee under the 2020 Notes Indenture.

97.    "*Unclaimed Distribution*" means any distribution under the Plan on account of an Allowed Claim or Interest to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Reorganized Debtor of an intent to accept a particular distribution; (c) responded to the Debtor's or Reorganized Debtor's requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

98.    "*Unimpaired*" means, with respect to a Claim, Interest or Class of Claims or Interests, a Claim, Interest or Class of Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

99.    "*Voting Deadline*" means 5:00 P.M. (Prevailing Eastern Time) on June 23, 2020, or such other later date as may be set by the Debtor.

## 1.2    **Rules of Interpretation**

For purposes of the Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

## 1.3    **Computation of Time**

Bankruptcy Rule 9006(a) applies in computing any period of time prescribed or allowed herein.

## 1.4    **Governing Law**

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

## 1.5    **Reference to Monetary Figures**

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

## ARTICLE II

### ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in ARTICLE III.

## 2.1    **Administrative Claims**

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor or Reorganized Debtor, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim either: (a) on the Effective Date, or as soon as reasonably practicable thereafter; (b) if the Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (c) if the Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of its

business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claims.

## 2.2   **Professional Claims**

All requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed no later than 45 days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code. The Reorganized Debtor shall pay Professional Claims in Cash in the amount the Bankruptcy Court allows. From and after the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

## 2.3   **Priority Tax Claims**

Each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Priority Tax Claim: (a) the treatment provided by section 1129(a)(9)(C) of the Bankruptcy Code; (b) a Cash payment on, or as soon as reasonably practicable after, the later of the Effective Date or the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, equal to the amount of such Allowed Priority Tax Claim; or (c) such other less favorable treatment as may be agreed upon between the Holder of such Allowed Priority Tax Claim and the Debtor. If payment is made in accordance with section 1129(a)(9)(C), installment payments shall be made quarterly and interest shall accrue in accordance with 26 U.S.C. § 6621. On the Effective Date, Liens securing such Allowed Secured Tax Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim may be paid in full in Cash in accordance with the terms of any agreement between the Debtor and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy law, or in the ordinary course of business.

## 2.4   **Other Priority Claims**

Each Holder of an Allowed Other Priority Claim due and payable on or before the Effective Date shall receive in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Other Priority Claim: (a) the treatment provided by section 1129(a)(9) of the Bankruptcy Code; (b) a Cash payment on, or as soon as reasonably practicable after, the later of the Effective Date or the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, equal to the amount of such Allowed Other Priority Claim; or (c) such other less favorable treatment as may be agreed upon between the Holder of such Allowed Priority Tax Claim and the Debtor.

## 2.5   **Payment of Statutory Fees**

Notwithstanding anything to the contrary contained herein, on the Effective Date, the Debtor shall pay, in full in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation. On and after the Effective Date, the Reorganized Debtor shall pay the applicable U.S. Trustee fees until the entry of a Final Decree in the Debtor's Chapter 11 Case or until the Chapter 11 Case is converted or dismissed.

## 2.6   **Trustee Expenses**

On the Effective Date, the Reorganized Debtor shall pay all reasonable, documented, and unpaid fees, expenses and out-of-pocket costs (including the reasonable and documented fees and expenses of counsel to the Trustee) incurred by the Trustee through the Effective Date in connection with making distributions pursuant to the Plan, if any, except any such fees, costs and expenses as may be attributable to the Trustee's gross negligence or willful misconduct.

# ARTICLE III

## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

Except for the Claims addressed in <u>ARTICLE II</u>, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.  For the avoidance of doubt, Secured Tax Claims are being addressed under <u>Section 2.3</u> of the Plan.

3.1   **Classification of Claims and Interests**

Claims against and Interests in the Debtor are divided into the following lettered Classes:

| Letter | Class |
| --- | --- |
| Class A | Class A consists of the 2024 Notes Claims. |
| Class B | Class B consists of the BBVA Claim. |
| Class C | Class C consists of all Other Secured Claims. |
| Class D | Class D consists of the 2020 Notes Claims. |
| Class E | Class E consists of the Bancomext Claim. |
| Class F | Class F consists of the Banco Multiva Claim. |
| Class G | Class G consists of the Intercam Claim. |
| Class H | Class H consists of the Short Term Notes Claim. |
| Class I | Class I consists of all General Unsecured Claims. |
| Class J | Class J consists of all Intercompany Claims. |
| Class K | Class K consists of all Interests. |

3.2   **Treatment of Classes of Claims and Interests**

The following chart designates the Class of Claims against and Interests in the Debtor and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code and (c) deemed to accept or reject the Plan.  The Debtor may not have Holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in <u>Section 3.4</u> of the Plan.

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| A | 2024 Notes Claims | Unimpaired | Deemed to Accept; Not Entitled To Vote |
| B | BBVA Claim | Unimpaired | Deemed to Accept; Not Entitled To Vote |
| C | Other Secured Claims | Unimpaired | Deemed to Accept; Not Entitled To Vote |
| D | 2020 Notes Claims | Impaired | Entitled to Vote |
| E | Bancomext Claim | Unimpaired | Deemed to Accept; Not Entitled To Vote |
| F | Banco Multiva Claim | Unimpaired | Deemed to Accept; Not Entitled To Vote |
| G | Intercam Claim | Unimpaired | Deemed to Accept; Not Entitled To Vote |
| H | Short Term Notes Claim | Unimpaired | Deemed to Accept; Not Entitled To Vote |
| I | General Unsecured Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| J | Intercompany Claims | Unimpaired | Deemed To Accept; Not Entitled to Vote |
| K | Interests | Unimpaired | Deemed To Accept; Not Entitled To Vote |

Except to the extent that a Holder of an Allowed Claim against or Interest in the Debtor as applicable, agrees to a less favorable treatment, such Holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Interest. Unless otherwise indicated, the Holder of an Allowed Claim or Interest, as applicable, shall receive such treatment on the Effective Date, or as soon as reasonably practicable thereafter:

**Class A (2024 Notes Claims)**

(1) *Classification*: Class A consists of all 2024 Notes Claims.

(2) *Treatment*: On the Effective Date, each Holder of an Allowed 2024 Notes Claim shall have its 2024 Notes Claim Reinstated.

(3) *Voting*: Class A is *Unimpaired*. Holders of 2024 Notes Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and not entitled to vote to accept or reject the Plan.

**Class B (BBVA Claim)**

    *(1)* *Classification*: Class B consists of the BBVA Claim.

    *(2)* *Treatment*:  On the Effective Date, the BBVA Claim shall be Reinstated.

    *(3)* *Voting*: Class B is Unimpaired.  BBVA is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

**Class C (Other Secured Claims)**

    *(1)* *Classification*: Class C consists of all Allowed Other Secured Claims against the Debtor.

    *(2)* *Treatment*: Each holder of an Allowed Other Secured Claim shall, at the election of the Reorganized Debtor, (i) have the legal, equitable and contractual rights of such Holder Reinstated, (ii) receive, at the option of the Debtor, (A) Cash in an amount equal to such Allowed Other Secured Claim or (B) such other treatment as renders its Allowed Other Secured Claim Unimpaired, or (C) such other treatment as the Reorganized Debtor and the holder of such Allowed Other Secured Claim shall agree.

    *(3)* *Voting*: Class C is Unimpaired.  Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan.

**Class D (2020 Notes Claims)**

    *(1)*  *Classification:*  Class D consists of all 2020 Notes Claims.

    *(2)* *Treatment*:  In *full and final* satisfaction, settlement, release, and discharge of and exchange for each Allowed 2020 Notes Claim, each Holder of an Allowed 2020 Notes Claim shall receive its Pro Rata share of the New Notes Distribution, with each such Holder's pro rata share of the New Notes Distribution to be determined based on whether such Holder held 2020 Notes as of the Record Date, validly voted all of its 2020 Notes prior to the Voting Deadline and delivered its 2020 Notes in accordance with the required procedures.

    *(3)* *Voting*:  Class D is impaired.  Holders of 2020 Notes Claims are entitled to vote to accept or reject the Plan.

**Class E (Bancomext Claim)**

    *(1)* *Classification*: Class E consists of the Bancomext Claim.

    *(2)* *Treatment*:  On the Effective Date, the Bancomext Claim shall be Reinstated.

    *(3)* *Voting*: Class E is Unimpaired.  Bancomext is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

**Class F  (Banco Multiva Claim)**

    *(1)* *Classification*: Class F consists of the Banco Multiva Claim.

    *(2)* *Treatment*:  On the Effective Date, the Banco Multiva Claim shall be Reinstated.

    *(3)* *Voting*: Class F is Unimpaired.  Banco Multiva is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

**Class G (Intercam Claim)**

(1)  *Classification*: Class G consists of the Intercam Claim.

(2)  *Treatment*:  On the Effective Date, the Intercam Claim shall be Reinstated.

(3)  *Voting*: Class G is Unimpaired.  Intercam is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

**Class H (Short Term Notes Claim)**

(1)  *Classification*: Class H consists of the Short Term Notes Claim.

(2)  *Treatment*:  On the Effective Date, the Short Term Notes Claim shall be Reinstated.

(3)  *Voting*: Class H is Unimpaired.  Holders of Short Term Notes Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

**Class I (General Unsecured Claims)**

(1)  *Classification:*  Class I consists of all Allowed General Unsecured Claims against the Debtor.

(2)  *Treatment*:  Each Holder of an Allowed General Unsecured Claim shall have its Allowed General Unsecured Claim Reinstated and paid on the later to occur of the Effective Date or when such Allowed General Unsecured Claim becomes due in the ordinary course of business of the Debtor or the Reorganized Debtor in accordance with the terms of the particular transaction giving rise to such Allowed General Unsecured Claim.

(3)  *Voting*:  Class I is unimpaired.  Holders of Allowed General Unsecured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed General Unsecured Claims are not entitled to vote to accept or reject the Plan.

**Class J (Intercompany Claims)**

(1)  *Classification*: Class J consists of all Allowed Intercompany Claims against the Debtor.

(2)  *Treatment*: Each Allowed Intercompany Claim will be Reinstated.

(3)  *Voting*: Class J is Unimpaired.  Holders of Allowed Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject the Plan.

**Class K (Interests)**

(1)  *Classification*: Class K consists of all Allowed Interests, including without limitation, Intercompany Interests.

(2)  *Treatment*: On the Effective Date, the Allowed Interests shall be Reinstated.

(3)  *Voting*: Class K is Unimpaired.  Holders of Allowed Interests are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Interests are not entitled to vote to accept or reject the Plan.

3.3     **Special Provision Governing Reinstated and Unimpaired Claims**

Nothing under the Plan shall affect the Debtor's rights regarding any Reinstated or Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Reinstated or Unimpaired Claim.

3.4     **Elimination of Vacant Classes**

Any Class of Claims or Interests that (a) does not have a Holder of an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing or (b) is entitled to vote on the Plan but with respect to which no Ballots are cast or no Ballots are deemed to be cast, shall be deemed eliminated from the Plan for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**ARTICLE IV**

**PROVISIONS FOR IMPLEMENTATION OF THE PLAN**

4.1     **General Settlement of Claims**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims and Interests.

4.2     **Subordination**

The allowance, classification, and treatment of all Claims and Interests under the Plan shall conform to and with the respective contractual, legal, and equitable subordination rights of such Claims and Interests, and the Plan shall recognize and implement any such rights.  Pursuant to section 510 of the Bankruptcy Code, except where otherwise provided herein, the Debtor reserves the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

4.3     **Sources of Cash for Plan Distributions**

All Cash consideration necessary for the Reorganized Debtor to make payments or distributions pursuant to this Plan shall be obtained from Cash of the Reorganized Debtor.  Further, the Reorganized Debtor will be entitled to transfer funds between and among itself and the Non-Debtor Guarantors as it determines to be necessary or appropriate to enable it to satisfy its obligations under the Plan.  Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtor's historical intercompany account settlement practices and will not violate the terms of the Plan.

4.4     **Issuance of New Notes**

On and after the Effective Date, the Reorganized Debtor is authorized to issue, execute, deliver or otherwise bring into effect, as the case may be, to or for the benefit of the Holders of Allowed 2020 Notes Claims, the New Notes and any other instruments, certificates, and other documents or agreements required to be issued, executed or delivered pursuant to the Plan, and take any other necessary actions in connection with the foregoing, in each case without need for further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Entity.  The issuance of the New Notes and the related note guarantees shall be exempt from registration under section 1145 of the Bankruptcy Code and, to the extent applicable, under applicable securities laws.  All documents, agreements and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of this Plan shall become effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Entity (other than as expressly required by such applicable agreement).

4.5    **Vesting of Assets in the Reorganized Debtor**

Except as otherwise provided herein, or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property of the Estate and all Causes of Action shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan or any other agreement or document related thereto or entered into in connection therewith, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

4.6    **Discharge from 2020 Notes, Instruments, Certificates, and Other Documents**

On the Effective Date, except as otherwise provided in this Plan: (1) the 2020 Notes, the 2020 Notes Indenture, the 2020 Notes Guarantees, and any other certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor giving rise to any Claim or Interest (except such certificates, mortgages, notes, or other instruments or documents evidencing indebtedness or obligations of or ownership interest in the Debtor that are specifically Reinstated or otherwise not Impaired under the Plan) shall be deemed cancelled, discharged, released and extinguished, and neither the Debtor nor the Non-Debtor Guarantors shall have any continuing obligations thereunder; and (2) the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor (except such agreements, certificates, mortgages, notes, or other instruments evidencing indebtedness or obligations of or ownership interests in the Debtor that are specifically Reinstated or otherwise not Impaired under the Plan) shall be released and discharged; provided, however, notwithstanding Confirmation and the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of enabling Holders of Allowed Claims to receive distributions under the Plan as provided herein; provided further, however, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or result in any expense or liability to the Reorganized Debtor, except to the extent set forth in or provided for under this Plan. Notwithstanding the foregoing and solely for the purpose set forth in this sentence, the following rights of the Trustee shall remain in effect after the Effective Date: (1) rights to payment of fees, expenses and indemnification obligations, including from property distributed hereunder to the Trustee, whether pursuant to the exercise of a charging lien or otherwise, (2) rights relating to distributions made to Holders of Allowed 2020 Notes Claims by the Trustee from any source, including distributions hereunder, (3) rights relating to representation of the interests of the Holders of 2020 Notes Claims by the Trustee in the Chapter 11 Case to the extent not discharged or released hereunder or any order of the Bankruptcy Court, and (4) rights relating to participation by the Trustee in any proceedings related to the Plan. On and after the Effective Date, all duties and responsibilities of the Trustee shall be discharged unless otherwise specifically set forth in or provided for under the Plan.

4.7    **Restructuring Transactions**

On the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtor may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable law; and (4) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

4.8 **Corporate Action**

The Debtor or the Reorganized Debtor, as applicable, is authorized to take all further corporate actions necessary to effectuate the Plan and authorize each of the matters provided for by the Plan involving the corporate structure of the Debtor or corporate or related actions to be taken by or required of the Reorganized Debtor, whether taken prior to or as of the Effective Date.

4.9 **New Corporate Governance Documents**

Solely to the extent required by applicable non-bankruptcy law, on or immediately before the Effective Date, the Reorganized Debtor will file its New Corporate Governance Documents with the applicable Secretaries of State and/or other applicable authorities in their respective states, provinces, or countries of incorporation in accordance with the corporate laws of the respective states, provinces, or countries of incorporation. The New Corporate Governance Documents will be consistent with the provisions of the Plan and the Bankruptcy Code. After the Effective Date, the Reorganized Debtor may amend and restate its New Corporate Governance Documents as permitted by the laws of their respective jurisdiction of formation and their respective New Corporate Governance Documents.

4.10 **Effectuating Documents; Further Transactions**

On and after the Effective Date, the Reorganized Debtor, and its officers and/or members of the board of directors, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

4.11 **Section 1146(a) Exemption**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property under the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

4.12 **Managers, Directors and Officers**

Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, and except as may otherwise be disclosed in the Disclosure Statement, as of the Effective Date, the directors and officers who are identified in the Plan Supplement shall serve as the initial board of directors and officers of the Reorganized Debtor. Pursuant to section 1129(a)(5), the Debtor will disclose in the Plan Supplement, on or prior to the Confirmation Date, the identity and affiliations of any Person proposed to serve on the Reorganized Debtor's board of directors and, to the extent such Person is an Insider, the nature of any compensation for such Person. After the Effective Date, the corporate governance and management of the Reorganized Debtor shall be determined by the applicable board of managers or board of directors in accordance with the laws of the applicable state or county of organization.

4.13 **Preservation of Rights of Action**

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. **No Entity may rely on the absence of a specific reference in**

**the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor or the Reorganized Debtor will not pursue any and all available Causes of Action against them. The Debtor and the Reorganized Debtor expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtor expressly reserves all Causes of Action, for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel, judicial, equitable, or otherwise, or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. From and after the Effective Date, the Debtor or the Reorganized Debtor, as applicable, shall have the exclusive right, authority and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw or litigate to judgment any Cause of Action and to decline to do any of the foregoing without further notice to or action, order or approval of the Bankruptcy Court.

Notwithstanding any provision in the Plan or any Order entered in the Chapter 11 Case, the Debtor and Reorganized Debtor forever waive, relinquish, and release any and all Causes of Action the Debtor and its estate had, have, or may have that arise under sections 544, 547, 548 and 549 of the Bankruptcy Code against any Entity, including Professionals, with whom the Debtor is conducting and will continue to conduct business on and after the Effective Date.

## 4.14    Directors and Officers Insurance Policies

Notwithstanding anything in the Plan to the contrary, the Reorganized Debtor shall be deemed to have assumed all of its D&O Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtor's foregoing assumption of each of the unexpired D&O Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtor under the Plan as to which no Proof of Claim need be filed. In addition, after the Effective Date, the Reorganized Debtor shall not terminate or otherwise reduce the coverage under any D&O Insurance Policy (including any "tail policy") in effect on the Petition Date, with respect to conduct occurring prior thereto, and all directors and officers of the Debtor who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and officers remain in such positions after the Effective Date.

## 4.15    Indemnification Provisions in Organizational Documents

On and from the Effective Date, and except as prohibited by applicable non-bankruptcy law, the Reorganized Debtor shall assume or reinstate, as applicable, all indemnification obligations in place as of the Effective Date (whether in by- laws, certificates of incorporation, board resolutions, contracts, or otherwise) for the current and former directors, members, officers, managers, employees, attorneys, other professionals and agents of the Debtor; provided, however, such indemnification obligations shall not apply with respect to any act or omission constituting gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction, except to the extent of available insurance.

## 4.16    Reinstatement of Equity Interests

On the Effective Date, all equity interests in the Debtor, including Intercompany Interests, shall be deemed reinstated without any additional act on the part of the Debtor or the Reorganized Debtor.

## 4.17    Exemption from Registration Requirements

The offering, issuance, and distribution of any Securities, including the New Notes, and the related note guarantees pursuant to the Plan shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act pursuant to section 1145 of the Bankruptcy Code, Regulation S of the Securities Act, or any other

available exemption from registration under the Securities Act, as applicable. To the extent that the issuance of the New Notes and the related note guarantees are covered by section 1145 of the Bankruptcy Code, except as otherwise provided in the Plan or the governing certificates or instruments, the New Notes and related note guarantees issued under the Plan will be freely tradable under the Securities Act by the recipients thereof, subject to: (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any applicable state or foreign securities laws, if any, and any rules and regulations of the SEC, if any, applicable at the time of any future transfer of such Securities or instruments, including any such restrictions any agreement governing the New Notes and related note guarantees; (b) the restrictions, if any, on the transferability of such securities and instruments; and (c) any other applicable regulatory approval.

**ARTICLE V**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

5.1    **Assumption and Rejection of Executory Contracts and Unexpired Leases**

On the Effective Date, except as otherwise provided herein or in any contract, instrument, release, indenture, or other agreement entered into in connection with the Plan, Executory Contracts and Unexpired Leases shall be deemed assumed as of the Effective Date, unless such Executory Contract or Unexpired Lease (1) was assumed or rejected previously by the Debtor, (2) previously expired or terminated pursuant to its own terms; or (3) is the subject of a motion to reject filed on or before the Effective Date, if any. Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumption of such Executory Contracts or Unexpired Leases as set forth in the Plan, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, assumptions of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by a Bankruptcy Court order shall re-vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms notwithstanding any provision in such assumed Executory Contract or Unexpired Lease that prohibits, restricts or conditions such assumption, assignment or transfer. Any provision in the assumed Executory Contracts and Unexpired Leases that purports to declare a breach or default based in whole or in part on the commencement or continuance of these Chapter 11 Case or any successor cases is hereby deemed unenforceable.

5.2    **Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be classified as a General Unsecured Claim and shall be treated in accordance with Article III, as applicable.

5.3    **Cure of Defaults for Executory Contracts and Unexpired Leases Assumed.**

Claims or defaults arising or becoming due under any assumed Executory Contract or Unexpired Lease after the effective date of assumption of the applicable assumed Executory Contract or Unexpired Lease are to be paid in full in the ordinary course by the applicable Debtor or Reorganized Debtor, as applicable, subject to the rights of the Debtor or Reorganized Debtor, as applicable, to assert or apply, as applicable, any defenses, setoffs, credits, or discounts available under the applicable assumed Executory Contract or Unexpired Lease or under applicable non-bankruptcy law, and, for the avoidance of doubt, such Claims or defaults shall not be released, expunged, discharged, or enjoined by the Plan or the Confirmation Order and there shall be no need or requirement for the counterparty to such Executory Contract or Unexpired Lease to file a proof of claim for such Claim or default. Nothing in the Plan releases or discharges the applicable Debtor or Reorganized Debtor from (1) obligations to fully satisfy Cure Claims on the Effective Date, or to the extent a dispute exists regarding the Cure Claim, upon entry of a Final Order resolving the dispute or upon mutual agreement between the applicable Debtor or Reorganized Debtor and the applicable counterparty, or (2) Claims, defaults or obligations arising or becoming due under any assumed Executory Contract or Unexpired Lease after the effective date of such assumption of the applicable assumed Executory Contract or Unexpired Lease pursuant to the terms thereof.

In the event of a dispute regarding (1) the amount of any payment to cure such a default, (2) the ability of the applicable Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter

18

pertaining to assumption, the cure payment, if any, required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.

5.4    **Insurance Policies**

All of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto, including the D&O Insurance Policies, shall be treated as and deemed to be Executory Contracts under the Plan. As of the Effective Date, the Debtor shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto.

5.5    **Indemnification Provisions**

As of the Effective Date, the Debtor and Reorganized Debtor, as applicable, shall be deemed to have assumed all of the Indemnification Provisions in place on or before the Effective Date for Claims related to or in connection with any actions, omissions, or transactions occurring before the Effective Date. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor's foregoing assumption of each of the Indemnification Provisions. Notwithstanding anything to the contrary contained herein, (1) Confirmation shall not discharge, impair, or otherwise modify any obligations assumed by the foregoing assumption of the Indemnification Provisions, (2) each such obligation shall be deemed and treated as an Executory Contract that has been assumed by the Debtor under the Plan and as to which no Proof of Claim need be filed, and (3) as of the Effective Date, the Indemnification Provisions shall be binding and enforceable against the Reorganized Debtor.

5.6    **Benefit Programs**

As of the Effective Date, all employee compensation and benefit programs of the Debtor, including programs subject to section 1114 and 1129(a)(13) of the Bankruptcy Code, if any, entered into before or after the Petition Date and not since terminated, shall be deemed to be, and shall be treated as though they are, Executory Contracts that are assumed under the Article V, but only to the extent that rights under such programs are held by the Debtor or Persons who are employees of the Debtor as of the Confirmation Date; provided, however, that nothing herein shall extend or otherwise modify the duration of any such program or prohibit the Debtor or the Reorganized Debtor from modifying the terms and conditions of any such program or benefits as otherwise permitted by such program and applicable nonbankrutpcy law.

5.7    **Modifications, Amendments, Supplements, Restatements or Other Agreements**

Unless otherwise provided for in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

5.8    **Reservation of Rights**

If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of such assumption or rejection, the Debtor or Reorganized Debtor, as applicable, shall have 28 calendar days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by assuming or rejecting such contract or lease.

5.9    **Nonoccurrence of the Effective Date**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code.

5.10    **Contracts and Leases Entered into After the Petition Date**

Contracts and leases entered into after the Petition Date by the Debtor will be performed by the Debtor or Reorganized Debtor in the ordinary course of the Debtor's business. Accordingly, such contracts and leases will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

6.1    **Distributions on Account of Claims Allowed as of the Effective Date**

Except as otherwise provided in the Plan, a Final Order, or as otherwise agreed to by the Debtor or the Reorganized Debtor (as the case may be) and the Holder of the applicable Allowed Claim, on the Distribution Date, the Reorganized Debtor shall make initial distributions under the Plan on account of Claims Allowed on or before the Effective Date, subject to the Debtor's and Reorganized Debtor's right to object to Claims; provided, however, that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (2) Allowed Priority Tax Claims shall be paid in accordance with Section 2.3. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim may be paid in full in Cash in accordance with the terms of any agreement between the Debtor or the Reorganized Debtor (as the case may be) and the Holder of such Claim or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

6.2    **Special Rules for Distributions to Holders of Disputed Claims**

Notwithstanding any provision to the contrary in the Plan and except as otherwise agreed by the relevant parties: (1) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order and (2) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order or the Claim has been Allowed or expunged. Any dividends or other distributions arising from property distributed to Holders of Allowed Claims in a Class and paid to such Holders under the Plan shall be paid also, in the applicable amounts, to any Holder of a Disputed Claim, as applicable, in such Class that becomes an Allowed Claim after the date or dates that such dividends or other distributions were earlier paid to Holders of Allowed Claims in such Class.

6.3    **Disbursing Agent**

Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Disbursing Agent on or as soon as practicable after the Effective Date. To the extent the Disbursing Agent is the Reorganized Debtor, the Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement, the provisions hereof.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent may be paid in Cash by the Reorganized Debtor.

6.4    **Distributions on Account of 2020 Notes Claims**

On or as soon as is reasonably practicable after the Effective Date, the Reorganized Debtor or the Disbursing Agent shall distribute the New Notes Distribution in accordance with the terms of this <u>Article VI</u> and the Plan Supplement. Instructions on how holders of 2020 Notes will receive their pro rata share of the New Notes Distribution will be provided in the Plan Supplement.  As a condition to receiving its pro rata share of the New Notes Distribution, the Debtor or the Reorganized Debtor may require a Holder of 2020 Notes to surrender its 2020 Notes by completing the procedures to be described in the Plan Supplement.  The method for issuance of the New Notes will be described in greater detail in the Plan Supplement.

Holders of 2020 Notes who do not fulfill the requirements noted above and in the Plan Supplement for the receipt of their pro rata share of the New Notes Distribution within one hundred and eighty (180) days after the Effective Date shall forfeit their entitlement to a distribution under the Plan, shall not participate in any distribution under the Plan, and shall have their Claims on account of the 2020 Notes discharged.  Any property in respect of such forfeited 2020 Notes Claims would revert to the Reorganized Debtor.

6.5    **Delivery of Distributions and Undeliverable or Unclaimed Distributions**

(a)    Delivery of Distributions

Except as otherwise provided in the Plan (including in <u>Section 6.4</u> above), distributions to Holders of Allowed Claims shall be made to Holders of record as of the Record Date by the Reorganized Debtor or the Disbursing Agent, as appropriate: (a) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtor or the applicable Disbursing Agent, as appropriate or (b) on any counsel that has appeared in the Chapter 11 Case on the Holder's behalf.  The Debtor shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Record Date; <u>provided</u>, <u>however</u>, that distributions on account of the 2020 Notes Claims shall be made in accordance with <u>Section 6.4</u> above.  Subject to this <u>Article VI</u>, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.  The Debtor, the Reorganized Debtor, and the Disbursing Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct.

(b)    Minimum; *De Minimis* Distributions.

Notwithstanding anything to the contrary contained in the Plan, the Disbursing Agent shall not be required to distribute Cash or other property to the Holder of any Allowed Claim or Allowed Interest if the amount of Cash or other property to be distributed on account of such Allowed Claim or Allowed Interest is less than $50.  Any Holder of an Allowed Claim or Allowed Interest on account of which the amount of Cash or other property to be distributed is less than such amount shall have such Claim or Interest, as applicable, discharged and shall be forever barred from asserting such Claim or Interest against the Debtor, the Reorganized Debtor, or their respective property.  Any Cash or other property not distributed pursuant to this provision shall be the property of the Reorganized Debtor.

(c)    Fractional New Notes or Amounts Less than Integral Multiples

The New Notes will be issued in minimum denominations of US$1 and integral multiples of $1 in excess thereof.  Notwithstanding any other provision in the Plan to the contrary, no fractional amounts of New Notes shall be issued or distributed pursuant to the Plan.  Whenever any distribution under the Plan would yield a distribution of New Notes below the integral requirement, the actual distribution shall reflect a rounding of such amount down to the nearest $1.  Upon the allocation of all of the whole New Notes authorized under the Plan, all remaining portions of the entitlements shall be canceled and shall be of no further force and effect.  For distribution and rounding purposes, DTC will be considered a single holder.

(d)    Compliance Matters

In connection with the Plan, to the extent applicable, the Reorganized Debtor or the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtor or the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtor reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances. All Persons holding Claims shall be required to provide any information necessary to effect information reporting and the withholding of such taxes. Notwithstanding any other provision of this Plan to the contrary, (a) each Holder of an Allowed Claim shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations, on account of such distribution, and (b) no distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Reorganized Debtor for the payment and satisfaction of such tax obligations.

(e)     Cash Payments

Except as otherwise set forth in this Section 6.5(e), distributions of Cash under the Plan shall be made by the Reorganized Debtor or the Disbursing Agent on behalf of the Debtor in U.S. dollars. At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements. Cash payments to creditors outside of the United States of America may be made, at the option of the Reorganized Debtor or the Disbursing Agent, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

(f)     Undeliverable and Unclaimed Distributions

(1)     *Undeliverable Distributions*. If any distribution to a Holder of an Allowed Claim is returned to the Reorganized Debtor or the Disbursing Agent as undeliverable or is otherwise unclaimed, no further distributions shall be made to such Holder unless and until the Reorganized Debtor or the Disbursing Agent is notified in writing of such Holder's then-current address or other necessary information for delivery. Subject to the succeeding sentence, the Reorganized Debtor or their duly appointed disbursing agent shall retain undeliverable distributions until such time as a distribution becomes deliverable. Each Holder of an Allowed Claim whose distribution remains (i) undeliverable for one hundred and eighty (180) days after the distribution is returned as undeliverable or (ii) otherwise has not been deposited, endorsed or negotiated within one hundred and eighty (180) days of the date of issuance shall have no claim to or interest in such distribution and shall be forever barred from receiving any distribution under the Plan. Nothing contained in this Plan shall require the Debtor, the Reorganized Debtor or the Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

(2)     *Reversion*. Any distribution under the Plan that is an Unclaimed Distribution for a period of one hundred and eighty (180) days after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in the Reorganized Debtor. Upon such revesting, the Claim or Interest of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary.

6.6     **Setoffs**

Except as otherwise expressly provided herein, the Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that the Debtor or Reorganized Debtor, as applicable, may hold against the Holder of

such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Reorganized Debtor of any such Claims, rights, and Causes of Action that the Reorganized Debtor may possess against such Holder.  In no event shall any Holder of Claims be entitled to set off any Claim against any Claim, right, or Cause of Action of the Debtor or Reorganized Debtor, as applicable, unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 or otherwise.

## 6.7    Allocation Between Principal and Accrued Interest

Except as otherwise provided in the Plan and to the extent permitted by applicable law, the aggregate consideration paid to Holders with respect to their Allowed Claims shall be treated pursuant to the Plan for income tax purposes as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest accrued through and including the Effective Date.

## ARTICLE VII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

## 7.1    Disputed Claims

In the event that the Debtor dispute a Claim, such Claim shall be Disputed unless Allowed or disallowed by a Final Order or as otherwise set forth in this ARTICLE VII.  Except as otherwise provided herein, all Proofs of Claim filed after the Effective Date shall be expunged without the need for any objection by the Reorganized Debtor or any further notice to or action, order, or approval of the Bankruptcy Court.  On and after the Effective Date, the Reorganized Debtor may settle any Claims for which a Proof of Claim has been filed or for which a Proof of Claim has not been filed, without further notice to or approval of the Bankruptcy Court, the Claims and Solicitation Agent, or any other party.

## 7.2    Resolution of Disputed Claims

Except insofar as a Claim is Allowed under the Plan, the Debtor or the Reorganized Debtor, as applicable, shall be entitled to object to the Claim.  Any objections to Claims shall be served and filed on or before the 120th day after the Effective Date or by such later date as ordered by the Bankruptcy Court.  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder thereof if service is effected in any of the following manners: (a) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; or (b) by first class mail, postage prepaid, on any counsel that has appeared on the Holder's behalf in the Chapter 11 Case.  The Debtor and the Reorganized Debtor shall be authorized to, and shall resolve all Disputed Claims or Interests by withdrawing or settling such objections thereto, or by litigating to Final Order in the Bankruptcy Court the validity, nature and/or amount thereof.  All Claims not objected to by the end of such 120-day period shall be deemed Allowed unless such period is extended upon approval of the Bankruptcy Court.  For the avoidance of doubt, except as otherwise provided in the Plan, from and after the Effective Date, the Reorganized Debtor shall have and retain any and all rights and defenses the Debtor had immediately prior to the Effective Date with respect to any Disputed Claim, including the Causes of Action retained pursuant to Section 4.13.

## 7.3    Estimation of Claims

The Debtor or the Reorganized Debtor, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated in accordance with section 502(c) of the Bankruptcy Code for any reason, regardless of whether any Entity previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection.  If the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, the estimated amount shall constitute a maximum limitation on such

Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

7.4    **No Interest**

Unless otherwise expressly provided in the Plan or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

7.5    **No Distributions Pending Allowance**

Notwithstanding any other provision of this Plan to the contrary, no payments or distributions of any kind or nature shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order and the Disputed Claim has become an Allowed Claim.  Distributions on account of Disputed Claims that become Allowed Claims shall be made pursuant to Section 6.2.

7.6    **Disallowance of Claims and Interests**

All Claims of any Entity from which property is sought by the Debtor under section 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtor or the Reorganized Debtor allege is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Debtor or the Reorganized Debtor, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

### ARTICLE VIII

### EFFECT OF CONFIRMATION OF THE PLAN

8.1    **Compromise and Settlement of Claims, Interests, and Controversies**

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made on account of such Allowed Claim or Allowed Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests, and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtor may compromise and settle Claims against them and Causes of Action against other Entities.

8.2    **Discharge of Claims and Termination of Interests**

**Except as otherwise provided for herein and effective as of the Effective Date: (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or any of its assets, property, or Estate; (b) the Plan shall bind all Holders of Claims and Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests shall be satisfied,**

discharged, and released in full, and the Debtor's liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtor, the Debtor's Estate, the Reorganized Debtor, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

8.3    **Releases by the Debtor**

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise expressly provided herein, for good and valuable consideration, as of the Effective Date, to the extent permitted by applicable laws, the Released Parties are conclusively, absolutely, unconditionally, irrevocably, and forever deemed released and discharged by the Debtor, the Reorganized Debtor, and the Debtor's Estate from any and all actions, Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, asserted or that could possibly have been asserted on behalf of the Debtor, that the Debtor, the Reorganized Debtor, or the Debtor's Estate, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the 2020 Notes, the 2020 Notes Indenture, the 2020 Notes Guarantees, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Case, the negotiation, formulation, solicitation, or preparation of the Disclosure Statement, the Plan, the Plan Supplement, or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, that the foregoing provisions of this Section 8.3 shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction; provided further that nothing in this Section 8.3 shall release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement, or otherwise given effect under, the Plan, including the New Notes and any other agreement or document related thereto or entered into in connection therewith, as applicable.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this Section 8.3, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by this Section 8.3; (c) in the best interests of the Debtor and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to the Debtor asserting any Claim or Cause of Action released by this Section 8.3.

8.4    **Releases by the Releasing Parties**

As of the Effective Date, to the extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtor, the Reorganized Debtor, the Estate, the Released Parties and each such Entity's successors and assigns, current and former affiliates, subsidiaries, officers, directors, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, solely in their respective capacities as such, and only if such Persons occupied any such positions at any time on or after the Petition Date, from any and all Claims, Interests, obligations, rights, liabilities, actions, causes of action, choses in action, suits, debts, demands, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims,

indemnity claims, counterclaims, and crossclaims (including all claims and actions against any Entities under the Bankruptcy Code) whatsoever, whether for tort, contract, violations of federal or state securities laws and Avoidance Actions, including any derivative Claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity asserted or that could possibly have been asserted, or would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the 2020 Notes, the 2020 Notes Indenture, the 2020 Notes Guarantees, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Releasing Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Case, the negotiation, formulation, solicitation, or preparation of the Disclosure Statement, the Plan, the Plan Supplement, or related agreements, instruments or other documents, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; _provided_, _however_, that the foregoing provisions of this Section 8.4 shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud, or criminal conduct as determined by a Final Order entered by a court of competent jurisdiction; _provided_ _further_ that nothing in this Section 8.4 shall release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement, or otherwise given effect under, the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this Section 8.4, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) important to the Plan; (b) in exchange for the good and valuable consideration provided by the Debtor, the Reorganized Debtor, the Estate and the Released Parties; (b) a good faith settlement and compromise of the Claims released by this Section 8.4; (c) in the best interests of the Debtor and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any Entity granting a release under this Section 8.4 from asserting any Claim or Cause of Action released by this Section 8.4.

8.5     Exculpation

No Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim; _provided_, _however_, that the foregoing "exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted fraud, gross negligence, or willful misconduct; _provided_, _further_, that in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to, or in connection with, the Plan. The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of acceptances and rejections of the Plan and the making of distributions pursuant to the Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable, law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

8.6     Injunction

Except as otherwise provided herein or for obligations issued pursuant hereto, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 8.3 or Section 8.4, discharged pursuant to Section 8.2, or are subject to exculpation pursuant to Section 8.5 are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estate of such Entities on account of or in connection with or with respect to any

such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, exculpated, or settled pursuant to the Plan.

8.7     **Protection Against Discriminatory Treatment**

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against the Reorganized Debtor, or any Entity with which the Reorganized Debtor has been or is associated, solely because the Reorganized Debtor was a debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but before the Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Case.

8.8     **Recoupment**

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtor or the Reorganized Debtor, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

8.9     **Release of Liens**

On the Effective Date and concurrently with the New Notes Distribution, all mortgages, deeds of trust, Liens, pledges, or other security interests relating to or arising from the 2020 Notes, if any, shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall vest and revert to the Reorganized Debtor and its successors and assigns. In addition, the Trustee, to the extent applicable and requested by the Reorganized Debtor, shall execute and deliver all documents to evidence the release of mortgages, deeds of trust, Liens, pledges, and other security interests related to the 2020 Notes and shall authorize the Reorganized Debtor to file UCC-3 termination statements or their equivalent (to the extent applicable) with respect thereto.

8.10    **Reimbursement or Contribution**

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (a) such Claim has been adjudicated as noncontingent or (b) the relevant Holder of a Claim has filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

**ARTICLE IX**

**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

9.1     **Conditions Precedent to the Effective Date.**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Section 9.2 of the Plan:

(a)     the Confirmation Order shall have been entered and become a Final Order, and such Final Order shall not have been stayed, modified, or vacated on appeal;

(b)        no Governmental Unit shall have issued any ruling or order enjoining the consummation of the Plan in a way that cannot be reasonably remedied by the Debtor or the Reorganized Debtor;

(c)        all necessary consents, approvals and actions of, filings with and notices to any governmental or regulatory authority necessary to permit the Debtor to consummate the Plan shall have been duly obtained, made or given and shall be in full force and effect, and all terminations or expirations of waiting periods imposed by any governmental or regulatory authority necessary for the consummation of the Plan shall have occurred; and

(d)        this Plan and all documents and agreements necessary to implement the Plan, including the New Corporate Governance Documents, the New Notes Indenture and any other agreement or document related to the foregoing or entered into in connection therewith (including documents effectuating affiliate guaranties), shall have: (i) all conditions precedent to such documents and agreements satisfied or waived pursuant to the terms of such documents or agreements; (ii) been tendered for delivery to the required parties and, to the extent required, filed with and approved by any applicable Governmental Units in accordance with applicable laws; and (iii) been effected or executed.

## 9.2    **Waiver of Conditions Precedent**

The Debtor may amend, modify, supplement or waive any of the conditions to the Effective Date set forth in Section 9.1 at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm or consummate the Plan.

## 9.3    **Effect of Non-Occurrence of Conditions to Consummation**

If prior to Consummation, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtor or any other Entity.

## ARTICLE X

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

## 10.1    **Modification of Plan**

Effective as of the date hereof: (a) the Debtor, in accordance with the Bankruptcy Code and the Bankruptcy Rules, may amend or modify the Plan before the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Debtor or the Reorganized Debtor, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan, subject to the limitations set forth herein.

## 10.2    **Revocation or Withdrawal of Plan**

The Debtor reserves the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans.  If the Debtor revokes or withdraws the Plan, or if Confirmation or the Effective Date does not occur, then: (a) the Plan will be null and void in all respects; (b) any allowance of a Claim or any other settlement or compromise embodied in the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (c) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Interests, or Causes of Action, (2) prejudice in any manner the rights of the Debtor or any other Entity, or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

## ARTICLE XI

## RETENTION OF JURISDICTION

11.1   **Jurisdiction**

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under and/or related to the Chapter 11 Case and the Plan to the fullest extent permitted by applicable law, including jurisdiction to:

(a)      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

(b)      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(c)      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(d)      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(e)      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan or the Confirmation Order, including contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement or the Disclosure Statement;

(f)      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

(g)      hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Case, including: (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Section 6.5(a); (b) with respect to the releases, injunctions, and other provisions contained in ARTICLE VIII, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan or the Confirmation Order, or any Entity's rights arising from or obligations incurred in connection with the Plan or the Confirmation Order, including those arising under agreements, documents, or instruments executed in connection with the Plan; (d) related to section 1141 of the Bankruptcy Code; or (e) with respect to any Claims arising under or in connection with the 2020 Notes asserted by any current or former Holder of 2020 Notes against the Reorganized Debtor and Non-Debtor Guarantors;

(h)      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(i)      consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(j)      determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, or the Confirmation Order;

(k)      hear and determine matters concerning U.S. state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(l)      enter an order or Final Decree concluding or closing the Chapter 11 Case;

(m)      adjudicate any and all disputes arising from or relating to distributions under the Plan;

(n)      hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in connection with and under the Plan, including under Article VIII;

(o)      enforce all orders previously entered by the Bankruptcy Court; and

(p)      hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.1    **Additional Documents**

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor or the Reorganized Debtor, as applicable, and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

12.2    **Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

12.3    **Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

12.4    **Service of Documents**

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtor shall be served on:

| | |
|---|---|
| **Reorganized Debtor:** | **Grupo Famsa S.A.B. de C.V.** |
| | Av. Pino Suarez No. 1202 Nte. |
| | Monterrey, N.L. Mexico 64000 |
| | Attn: Luis Gerardo Villarreal Rosales |

| | |
|---|---|
| **Counsel to Reorganized Debtor:** | **Paul Hastings LLP** |
| | 200 Park Avenue |
| | New York, New York 10166 |
| | Attn:    Pedro A. Jimenez, Esq. |

12.5    **Term of Injunctions or Stays**

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

12.6    **Entire Agreement**

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

12.7    **Plan Supplement Exhibits**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Debtor's counsel at the address above or by downloading such exhibits and documents from the Bankruptcy Court's website at www.nysb.uscourts.gov.  Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.

12.8    **Non-Severability**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Reorganized Debtor; and (c) nonseverable and mutually dependent.

*[The remainder of this page is intentionally left blank.]*

Dated: May 29, 2020

Respectfully Submitted,


**GRUPO FAMSA S.A.B. DE C.V.**


 /s/ Luis Gerardo Villarreal Rosales
Name:    Luis Gerardo Villarreal Rosales
Title:    Chief Corporate Officer

## EXHIBIT A

### NON-DEBTOR GUARANTORS

Impulsora Promobien, S.A. de C.V.
Famsa Inc.
Famsa Financial, Inc.
Auto Gran Credito Famsa, S.A. de C.V.
Expormuebles, S.A. de C.V.
Mayoramsa, S.A. de C.V.
Verochi, S.A. de C.V.
Geografía Patrimonial, S.A. de C.V.
Famsa Mexico, S.A. de C.V.